UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FORD MOTOR COMPANY,

     Plaintiff,                     Case No.   _____

vs.

JOHN CENA,

     Defendant.

---

Lisa A. Brown (P67208)
Jong-Ju Chang (P70584)
Whitley S. Granberry (P81202)
DYKEMA GOSSETT PLLC
*Attorneys for Plaintiff*
400 Renaissance Center
Detroit, MI 48243
(313) 568-6943
lbrown@dykema.com
jchang@dykema.com
wgranberry@dykema.com

---

## **FORD MOTOR COMPANY'S COMPLAINT**

Plaintiff Ford Motor Company ("Ford"), through its counsel Dykema Gossett PLLC, alleges as its Complaint against Defendant John Cena ("Mr. Cena"), as follows:

**NATURE OF THE ACTION**

1.      This is an action for breach of contract, fraudulent misrepresentation, and unjust enrichment arising out of Mr. Cena's improper and unlawful resale of a custom-made, model year 2017 Ford GT sports car, in violation of the Ford GT Application Program and contracts pertaining to same.  Indeed, after being selected from thousands of applicants for the opportunity to purchase the Ford GT, Mr. Cena flipped his vehicle shortly after taking delivery of it, despite his agreement with Ford to maintain ownership of the vehicle for 24 months.  Upon information and belief, Mr. Cena has unfairly made a large profit from the unauthorized resale flip of the vehicle, and Ford has suffered additional damages and losses, including, but not limited to, loss of brand value, ambassador activity, and customer goodwill due to the improper sale.

**THE PARTIES**

2.      Ford Motor Company ("Ford") is a Delaware corporation with its principal place of business located at One American Road, Dearborn, Michigan 48126.

3.      John Cena is an individual, who, upon information and belief, resides and is domiciled in the state of Florida.

**JURISDICTION AND VENUE**

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a), as the parties are citizens of different states, and the amount in controversy exceeds $75,000.

5.      There is complete diversity of citizenship because Ford is a citizen of the states of Michigan and Delaware, and Mr. Cena is a citizen of Florida.

6.      The amount in controversy exceeds $75,000, exclusive of interests and costs, because Ford seeks, among other things, the disgorgement of profit that Mr. Cena made on his improper resale, and other damages, including, but not limited to, damages for loss of brand value, ambassador activity, and customer goodwill, which exceed $75,000.

7.      Personal jurisdiction and venue in this Court are proper under the forum selection clause in the parties' Contract, referenced below, which provides in the Program Terms and Conditions and Affidavit that all legal proceedings must be initiated only in courts located in Wayne County, Michigan.

**OPERATIVE CONTRACT DOCUMENTS**

8.      The documents related to the 2017 Ford GT Program, comprising the contract between Ford and Mr. Cena, include the Ford GT Application Program Terms and Conditions ("Program Terms and Conditions") (screen shots of same, attached as **Exhibit 1**); an Affidavit of Eligibility and Release ("Affidavit") that

Mr. Cena executed and had notarized on July 29, 2016 (attached as **Exhibit 2**); and a Ford GT Order Confirmation ("Order Confirmation") that Mr. Cena executed on January 28, 2017 (attached as **Exhibit 3**).  Collectively, these documents are referred to herein as the parties' "Contract."

<strong>GENERAL ALLEGATIONS</strong>

<strong><em>The Ford GT Program and Application Process</em></strong>

9.    The Ford GT "super car" is a limited edition, two-seater sports car designed to deliver extraordinary speed and exceptional handling found only in purpose-built racing cars.  It has a 647 horsepower, 3.5L EcoBoost V6 engine, and the base vehicle sells at a manufacturer's suggested retail price ("MSRP") of over $450,000.   Ford intends to build a very low volume of the Ford GT, for an approximate total of 1,000 vehicles over the next several years.

10.    Accordingly, Ford reserves these unique vehicles for only those individuals who truly desire a special ownership experience, such as car enthusiasts and collectors, those individuals who will be influencers and ambassadors of the vehicle and the Ford brand, and those individuals who truly desire to maintain ownership of the vehicle for their own use and not for purposes of reselling, flipping, or brokering the vehicle, or for price speculation.  As a result, Ford requires that the individuals who are ultimately selected to purchase the Ford GT agree not to sell their vehicle for 24 months after delivery.

11.   Ford anticipated that there would be more potential purchasers than there are available Ford GTs.  As a result, Ford conducted a selection process for the opportunity to purchase the vehicle through the Ford GT Application Program (the "Program").  Under the Program, Ford selects individuals who are best suited to enjoy the Ford GT to discuss a potential purchase of the vehicle.  In selecting these individuals, Ford takes into account, among other things, each applicant's interest in Ford cars, specifically the GT and in collectible cars generally, each applicant's relationship with Ford, if any, and each applicant's involvement in the motorsports community, if any.  Thousands of individuals applied for the opportunity to purchase a Ford GT under the Program.

12.   Applicants for the Program, including Mr. Cena, completed an on-line application through Ford's website.  To sign into the site and register, applicants, including Mr. Cena, were provided access to the Program Terms and Conditions (Ex. 1), and asked to check a box reflecting their agreement to same before they could proceed further.  Mr. Cena checked the box that he agreed to the Program Terms and Conditions.

13.   Applicants were then invited to complete their application electronically and answer specific questions about their relationship with Ford and Ford products, their car collections, their public influence, their involvement in the motorsports community, their vehicle-related charitable activities, and other

5

questions intended to provide Ford with information about the applicant and his or her interest in the Ford GT and experiences as a car owner.  Applicants could also post links to videos and photographs to support their applications and to show why they would be good Ford GT owners.  Mr. Cena posted such a video for Ford's consideration, but upon information and belief, it has since been taken down and can no longer be accessed.

14.    Accordingly, by applying under the Program, Mr. Cena confirmed his agreement to comply with the requirements in the Program Terms and Conditions. The Program Terms and Conditions specifically provide that:

> All information provided in the application must be accurate and provided with the express authorization of the applicant in the event that the application is completed by a third-party on applicant's behalf. Additionally, each applicant must also expressly acknowledge and agree to these Terms and Conditions, the Terms of Use and Ford's Privacy Policies.

(Ex. 1, at ¶5).

15.    On or about April 14, 2016, Mr. Cena completed his Program application.  Among other things, Mr. Cena acknowledged in his application that he was "well aware how selective Ford w[ould] be in allocating cars," and that the Ford GT would go "to an owner who truly deserved it and would care properly for the car."  He further stated: "That being said, I am so absolutely astounded by what the Ford team has done with this new design, if I were to be deemed fit for

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

ownership I would most certainly use every vehicle of communication to let the world know about the car, the brand, and the experience."

16.     In addition, in his application, Mr. Cena portrayed himself as an enthusiast of high-end automobiles, as well as the Ford brand, by attaching to his application, photographs, video clips, and web posts of himself in, and promoting, high-end cars.  Moreover, Mr. Cena is a known car collector, and referenced numerous limited edition and high-end vehicles that he owned and collected at the time of his application, including a model year 2006 Ford GT.

17.     Further, in his application materials, not only did Mr. Cena represent that he would promote the Ford GT, but he also listed numerous media outlets, shows, public platforms, and links on which he appeared.  Mr. Cena further represented his extensive and influential presence on social media, stating that he has "over 50 million unique social voices on Facebook, Twitter, and Instagram."

18.     Consequently, Ford selected Mr. Cena for the Program and determined that he was eligible for ownership of the Model Year 2017 GT based on his application materials and representations made to Ford.  As a result, Ford relied on these representations in selecting Mr. Cena for the Program over thousands of other applicants.

19.     On July 29, 2016, after Ford selected Mr. Cena to be eligible for ownership, Mr. Cena signed and notarized the Affidavit of Eligibility and Release

attached as Exhibit 2.  Mr. Cena also completed certain forms after being selected for the Program, including a Vehicle Ownership Preferences Form, in which he confirmed that his delivery location in Florida was where he would primarily be operating his vehicle.

20.    In Section 3 of the Affidavit, Mr. Cena attested that:  "I have read and understand, agree to and have fully complied with the Terms and Conditions applicable to the Program…."  (Ex. 2, ¶ 3).

21.    In addition, in Section 4 of the Affidavit, titled "Accuracy of Information," Mr. Cena also agreed that: "All of the information I submitted (or that was submitted on my behalf) in connection with my application in the Program is accurate.  I answered all questions and provided all requested information in the application truthfully, accurately and completely." (Ex. 2, ¶ 4).

22.    Further, in Section 6 of the Affidavit, titled "Sales of the GT," Mr. Cena agreed that:

> **6.  Sales of the GT.** ….I understand and acknowledge that any rights obtained by me in connection with the Program are not transferable.

(Ex. 2, ¶ 6).

23.    On December 12, 2016, the Ford GT Concierge Team—which is a group dedicated to assist selected Program applicants throughout the purchase

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

process—sent  Mr. Cena an email, notifying him of the time window in which he

could order his custom vehicle, and reminding him of the following:

> Your opportunity to purchase this vehicle is non-
> transferable and you agree to retain ownership for a
> minimum of 24 months after delivery and not to re-sell
> the vehicle within this period of time. The new Ford GT
> can only be purchased through a Ford GT Selling Dealer.

24.    Moreover, on January 28, 2017, Mr. Cena signed an Order

Confirmation (Ex. 3), in which he agreed that:

> "By signing this Order Confirmation Form you are
> verifying the following: … (B) You understand that
> being selected for the opportunity to purchase this
> vehicle is non-transferable and agree not to sell the
> vehicle within the first 24 months of delivery."

25.    Mr. Cena then made his first payment of $230,000 for the vehicle.

This payment had to be made before the vehicle would be built.  On or about

September 21, 2017, Mr. Cena made his second, final payment of $233,376.50 for

the vehicle.

26.    On or about September 23, 2017, the vehicle was delivered to Elder

Ford in Naples, Florida.  Mr. Cena then took possession of his 2017 Ford GT

thereafter.

### *Mr. Cena's Improper Resale of His Ford GT*

27.    By or around October 20, 2017, Ford learned that Mr. Cena had sold

his 2017 Ford GT, despite having just taken possession of it a few weeks earlier.

Mr. Cena made this resale of the vehicle without Ford's knowledge or approval, and in violation of his Contract with Ford.

28.    Upon learning this information, on or about October 25, 2017, a Ford representative contacted Mr. Cena to discuss the unlawful resale of the Ford GT. In a telephone call, the Ford representative directly asked Mr. Cena if he had sold his 2017 Ford GT, to which Mr. Cena responded that he did.

29.    Thereafter in a subsequent text chain, in which the Ford representative pointed out the consequences of Mr. Cena's Contract violation, Mr. Cena responded, "I completely understand and as stated am willing to work with you and Ford to make it right. My sincerest apologies."

30.    In a subsequent communications with the Ford representative, Mr. Cena again admitted he had sold the vehicle, and did so along with other assets to liquidate for cash to take care of expenses.

31.    Thereafter, on November 3, 2017, the Ford representative emailed Mr. Cena, formally notified Mr. Cena of his breach of the Contract, and requested that Mr. Cena obtain an immediate return of the vehicle.  The Ford representative further stated that Ford was prepared to facilitate a buyback of the vehicle at the price for which Mr. Cena purchased it and that they could discuss  how to address the profit he received from the unauthorized resale.  Finally, the Ford representative requested that Mr. Cena provide Ford with all documentation

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

relating to Mr. Cena's unauthorized resale of his Ford GT.  Mr. Cena responded that same day and stated that he would "get to work on this right away."

32.    To date, however, Mr. Cena has not "made it right," has not sought a return of the vehicle, and upon information and belief, has made a profit from the improper resale.  In addition, Mr. Cena still has failed to provide any documentation concerning the improper re-sale and is now refusing to do so, despite his earlier indications otherwise.

33.    Accordingly, Ford has incurred and will continue to incur substantial damages as a result of Mr. Cena's unlawful resale.  Upon information and belief, Mr. Cena has improperly benefited to Ford's detriment by receiving a large profit from the resale.  Ford also has lost almost two years of ambassadorship and brand value that Mr. Cena would have offered by owning the vehicle for the contractually required time.  Moreover, the unlawful resale bypassed a line of people waiting to purchase the vehicle through the Program, thus affecting Ford's goodwill and customer relationships.  Ford also lost the opportunity to put the vehicle into the hands of a customer who desired to own the vehicle and comply with the resale restrictions.  In addition, because of the unauthorized resale, Ford has lost the ability to control the reputation of its brand, the integrity of the Program and selection process, and who will receive a Ford GT in relation to the Program.

## COUNT I
### (Breach of Contract)

34.     The preceding paragraphs are hereby repeated and re-alleged as if set forth fully herein.

35.     Ford and Mr. Cena entered into a valid and binding Contract concerning Mr. Cena's 2017 Ford GT, which is comprised of documents including the Program Terms and Conditions, Affidavit and Order Confirmation.  (*See* Ex. 1-3).

36.     Ford has complied with all of its obligations under the Contract.

37.     Mr. Cena has breached the ownership and restriction of transfer provisions in the Contract by selling his 2017 Ford GT within 24 months of taking delivery of the vehicle and by failing to maintain ownership of the vehicle for 24 months.

38.     In addition, by flipping his vehicle within just weeks of receiving delivery, Mr. Cena further breached the provisions of the Contract in which he promised that all information in his application under the Program was accurate and true.  Specifically, Mr. Cena's quick re-sale of the vehicle shows he never intended to own the vehicle or abide by any transfer restrictions.

39.     Finally, by reselling his vehicle to a third-party, Mr. Cena violated the provision in Paragraph 6 in his Affidavit, in which he acknowledged that any rights obtained by him in connection with the Program were not transferable.

12

40.    All conditions precedent to Ford's enforcement of the Contract have occurred or been met.

41.    Mr. Cena has actual notice of his breach of the parties' Contract.

42.    As a result of Mr. Cena's breach, Ford has suffered damages in excess of $75,000, including, but not limited to, loss of brand value, ambassador activity, and customer goodwill.  In addition, upon information and belief, Mr. Cena has improperly received a profit from his breach under the unlawful re-sale above MSRP.

43.    Consequently, Mr. Cena is liable to Ford for its damages.

## COUNT II
### (Fraud)

44.    The preceding paragraphs are hereby repeated and re-alleged as if set forth fully herein.

45.    During the Program application process from approximately April 14, 2016 through the time Mr. Cena took delivery of his Ford GT in or about the end of September or early October 2017, Mr. Cena made certain  misrepresentations of material fact regarding his eligibility to be a Ford GT owner and as to his intent to maintain ownership of the vehicle for his own use, including:

- Falsely representing that he would be a good Ford GT owner;

- Falsely representing in his Vehicle Ownership Preferences form that he would be primarily operating the Ford GT in Tampa, Florida;

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

- Falsely representing that he would own the Ford GT for at least 24 months;

- Falsely representing that he would not sell the Ford GT during the first 24-month period after delivery;

- Falsely representing that he is best suited to enjoy the Ford GT as an owner;

- Falsely representing that he would care properly for the vehicle as an owner;

- Falsely representing he was eligible to own a Ford GT when he intended to sell the vehicle after less than one month; and

- Falsely representing in his Application and Order Confirmation that he wanted to be a part of a Program designed to maintain and promote the vehicle for at least 24 months.

46. Mr. Cena's representations were false and misleading.

47. Mr. Cena made these representations knowingly and recklessly with respect to their truth or falsity.

48. Mr. Cena made these representations with the intent that Ford would rely on them and that Ford would select Mr. Cena for the opportunity to purchase the Ford GT.

49. Ford justifiably relied on the representations to its detriment.

50. As a result of Mr. Cena's representations, Ford has suffered damages in excess of $75,000.

14

## COUNT III
### (Silent Fraud)

51.    The preceding paragraphs are hereby repeated and re-alleged as if set forth fully herein.

52.    During the Program application process from approximately April 14, 2016 through the time Mr. Cena took delivery of his Ford GT in or about the end of September or early October 2017, Mr. Cena failed to disclose material facts that he had a duty to disclose, including that he intended to resell his Ford GT shortly after taking delivery of it, and submitting an application that omitted facts concerning his view and intent on ownership and resale of the Ford GT.

53.    Mr. Cena had actual knowledge of the fact that he intended to resell and not own his Ford GT within the first 24 months after delivery.

54.    Mr. Cena's failure to disclose the foregoing facts caused Plaintiff to have a false impression of Mr. Cena's Program eligibility and desire to own the vehicle for 24 months.

55.    When Mr. Cena failed to disclose the foregoing facts, Mr. Cena knew the failure would create a false impression.

56.    When Mr. Cena failed to disclose the foregoing facts, Mr. Cena intended that Ford would rely on the resulting false impression and select him under the Program to purchase a Ford GT.

57.    Ford relied on the false impression.

15

58.    Ford was damaged as a result of its reliance.

## COUNT IV
### (Innocent Misrepresentation)

59.    The preceding paragraphs are hereby repeated and re-alleged as if set forth fully herein.

60.    During the Program application process from approximately April 14, 2016 through the time Mr. Cena took delivery of his Ford GT in or about the end of September or early October 2017, Mr. Cena made representations of material fact, including that he would be a good Ford GT owner; that he would be primarily operating the Ford GT in Tampa, Florida; that he would own the vehicle and not sell it for 24 months after delivery; that he was best suited to enjoy the Ford GT as an owner and would care for the vehicle properly; that he was eligible to own a Ford GT; and that he wanted to be part of the Program designed to maintain and promote the vehicle for at least 24 months.

61.    Mr. Cena made these representations in connection with his Contract with Ford.

62.    The representations were false when Mr. Cena made them.

63.    Ford would not have entered into the Contract if Mr. Cena had not made the foregoing representations.

64.    Ford has a loss as a result of entering into the contract, including loss of brand value, ambassador activity, customer goodwill, and the ability to control

16

its Program and who will receive a Ford GT under same. In addition, upon information and belief, Mr. Cena has improperly received a profit from his breach under the unlawful re-sale above MSRP.

65.     Ford's loss benefitted Mr. Cena, including, that, upon information and belief, Mr. Cena made a profit from the unauthorized resale of the vehicle.

## COUNT V
**(Unjust Enrichment)**

66.     The preceding paragraphs are hereby repeated and re-alleged as if set forth fully herein.

67.     Mr. Cena has received benefits as stated above, including profit from the improper sale of the 2017 Ford GT in the form of cash, that is unjust, unfair, inequitable, and should be turned over to Ford.

68.     These benefits have come at Ford's expense, and it would be inequitable for Mr. Cena to retain the benefits.

69.     Mr. Cena has been unjustly enriched at Ford's expense.

70.     Mr. Cena is responsible to Ford for damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ford Motor Company respectfully requests that the Court award the following relief:

(A)     Enter judgment in favor of Ford on all counts and award Ford all of its damages;

(B)    Award Ford all of its direct, incidental, and consequential damages suffered as a result of Mr. Cena's breach;

(C)    Order that Mr. Cena must disgorge his profits to Ford from the improper resale of his 2017 Ford GT;

(D)    Award Ford its litigation costs, interest, and attorneys' fees; and

(E)    Grant such other relief that this Court deems equitable, just, and appropriate.

Date:  November 30, 2017              DYKEMA GOSSETT PLLC

By: */s/* Jong-Ju Chang
    Lisa A. Brown (P67208)
    Jong-Ju Chang (P70584)
    Whitley S. Granberry (P81202)
    *Attorneys for Plaintiff*
    400 Renaissance Center
    Detroit, MI 48243
    (313) 568-6943
    lbrown@dykema.com
    jchang@dykema.com
    wgranberry@dykema.com