## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

FORD MOTOR COMPANY,

       Plaintiff,                 Case No. 2:17-CV-13876-AJT-DRG

v.

                               U.S. District Judge: Hon. Arthur J. Tarnow

JOHN CENA,                U.S. Magistrate Judge: Hon. David R. Grand

       Defendant.

---

<table>
<tr><td>

Lisa A. Brown (P67208)<br>
Jong-Ju Chang (P70584)<br>
Whitley S. Granberry (P81202)<br>
DYKEMA GOSSETT PLLC<br>
400 Renaissance Center<br>
Detroit, MI 48243<br>
(313) 568-6943<br>
lbrown@dykema.com<br>
jchang@dykema.com<br>
wgranberry@dykema.com<br>
*Attorneys for Plaintiff*

</td><td>

Bryan D. Hull (Fla. Bar. 20969)<br>
BUSH ROSS, P.A.<br>
1801 N. Highland Ave.<br>
Tampa, FL 33602<br>
(813) 224-9255<br>
bhull@bushross.com<br>
<br>
Jennifer M. Grieco (P55501)<br>
NEUMAN ANDERSON GRIECO MCKENNEY, P.C.<br>
*Local Counsel for John Cena*<br>
401 South Old Woodward, Ste 460<br>
Birmingham, MI 48009<br>
(248) 594-5252<br>
jgrieco@namglaw.com<br>
<br>
*Attorneys for Defendant*

</td></tr>
</table>

---

## MOTION TO DISMISS COMPLAINT AND TO STRIKE

The defendant, John Cena, moves to dismiss Ford Motor Company's complaint under Fed. R. Civ. P. 12(b)(6) because the final, governing contract containing all terms for the sale of the 2017 Ford GT did not restrict Cena from

reselling the vehicle. Ford and Cena agreed that any resale restriction would be in the selling dealer's sales agreement. Ford failed to cause its selling dealer to include any resale restriction, so Ford has no claim.

Cena further moves to dismiss for lack of federal subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), and to strike Ford's request for attorney's fees and all damages except $1 of its actual out-of-pocket costs under Fed. R. Civ. P. 12(f). The prior agreement on which Ford sues prohibits Ford from recovering attorney's fees and limits the recoverable damages to $1 of its actual out-of-pocket costs, so the Court has no diversity jurisdiction.

Cena's arguments are set forth in detail in the accompanying brief.

In accordance with Local Rule 7.1(a), the undersigned contacted Ford's counsel before filing this motion. Ford did not agree to the requested relief.

WHEREFORE, Defendant John Cena respectfully requests the Court to dismiss the complaint for failure to state a cause of action and for lack of federal subject matter jurisdiction, to strike Ford's requests for attorney's fees and damages exceeding $1 of its actual out-of-pocket costs, and to grant any other and further relief that the Court deems just and proper.

Respectfully submitted,

February 13, 2018

By: /s/ Bryan D. Hull
Bryan D. Hull (Fla. Bar. 20969)
BUSH ROSS, P.A.
1801 N. Highland Ave.
Tampa, FL 33602
(813) 224-9255
bhull@bushross.com

and

Jennifer M. Grieco (P55501)
NEUMAN ANDERSON GRIECO
MCKENNEY, P.C.
401 South Old Woodward, Ste 460
Birmingham, MI 48009
(248) 594-5252
jgrieco@nagmlaw.com

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

FORD MOTOR COMPANY,

       Plaintiff,

v.

JOHN CENA,

       Defendant.

Case No. 2:17-CV-13876-AJT-DRG

U.S. District Judge: Hon. Arthur J. Tarnow
U.S. Magistrate Judge: Hon. David R. Grand

---

| | |
|---|---|
| Lisa A. Brown (P67208)<br>Jong-Ju Chang (P70584)<br>Whitley S. Granberry (P81202)<br>DYKEMA GOSSETT PLLC<br>400 Renaissance Center<br>Detroit, MI 48243<br>(313) 568-6943<br>lbrown@dykema.com<br>jchang@dykema.com<br>wgranberry@dykema.com<br>*Attorneys for Plaintiff* | Bryan D. Hull (Fla. Bar. 20969)<br>BUSH ROSS, P.A.<br>1801 N. Highland Ave.<br>Tampa, FL 33602<br>(813) 224-9255<br>bhull@bushross.com<br><br>Jennifer M. Grieco (P55501)<br>NEUMAN ANDERSON GRIECO MCKENNEY, P.C.<br>*Local Counsel for John Cena*<br>401 South Old Woodward, Ste 460<br>Birmingham, MI 48009<br>(248) 594-5252<br>jgrieco@nagmlaw.com<br><br>*Attorneys for Defendant* |

# BRIEF IN SUPPORT OF
# MOTION TO DISMISS COMPLAINT AND TO STRIKE

# TABLE OF CONTENTS

**INDEX OF AUTHORITIES** ...............................................................................ii

**STATEMENT OF ISSUES PRESENTED** .............................................................iv

**CONTROLLING AND MOST APPROPRIATE AUTHORITIES** .........................v

**INTRODUCTION** ........................................................................................1

**BACKGROUND** .........................................................................................1

**ARGUMENT** ............................................................................................5

    **A.   Ford's claims fail under the final, fully-integrated Sales Agreement which Ford agreed would impose any restrictions on resale of the subject vehicle.**........................ 5

    **B.   The prior agreement Ford relies upon shows this action must be dismissed.**....... 9

    **C.   Ford's claims for attorney's fees and damages beyond out-of-pocket costs should be stricken.** ............................................................................... 11

**CONCLUSION** ..........................................................................................12

**CERTIFICATE OF SERVICE** ......................................................................14

i

# INDEX OF AUTHORITIES

**Cases**

*ADR N. Am., L.L.C. v. Agway, Inc.*, 303 F.3d 653 (6th Cir. 2002) ............... v, 6

*Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 666 N.W.2d 271 (2003) ........................................................................................................ v, 9

*Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co., 621 F.3d 554, 559 (6th Cir. 2010)* ................................................................................................ 9

*GE Healthcare Fin. Servs. v. Cardiology & Vascular Assocs.*, 2006 WL 950268, at \*4 (E.D. Mich. Apr. 12, 2006) .................................................... 11

*Helwig v. Kelsey-Hayes Co.*, 907 F. Supp. 253, 256 (E.D. Mich.1995) ...... v, 11

*Hill v. Blue Shield of Mich.*, 299 F.Supp.2d 742, 751 n. 7 (E.D.Mich.2003) .. 11

*Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 209 Mich. App. 365, 532 N.W.2d 541, 546 (1995).................................................................... 8

*In re Smith Trust*, 480 Mich. 19, 24, 745 N.W.2d 754 (2008) .......................... 5

*Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015) (quoting *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008)).................................... 6

*Martin v. East Lansing Sch. Dist.*, 193 Mich. App. 166, 483 N.W.2d 656 (1992) ........................................................................................................... v, 9

*Odell v. Humble Oil & Ref. Co.*, 201 F.2d 123, 128 (10th Cir. 1953) ......... v, 10

*Rodzik v. N.Y. Cent. R.R. Co.*, 169 F. Supp. 803, 806 (E.D. Mich. 1959) ... v, 12

*Saint Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1938)........ v, 10

*Sanchez-Arroyo v. E. Airlines, Inc.*, 835 F.2d 407, 408 (1st Cir. 1987)....... v, 10

*Sellers v. O'Connell*, 701 F.2d 575, 578 (6th Cir. 1983)........................ v, 10, 11

*Tyson v. Sterling Rental, Inc.*, 836 F.3d 571 (6th Cir. 2016) ......................... v, 8

*UAW-GM Human Res. Ctr. v. KSL Recreation Corp.*, 228 Mich. App. 486, 579 N.W.2d 411 (1998)................................................................................... v, 7

*Uhl v. Komatsu Forklift Co., Ltd.*, 512 F.3d 294 (6th Cir. 2008) .................. v, 8

*Valhal Corp. v. Sullivan Assocs., Inc.*, 44 F.3d 195, 209 (3d Cir. 1995) ..... v, 10

*Van Tassel v. McDonald Corp.*, 159 Mich. App. 745, 750-53, 407 N.W.2d 6 (1987) ........................................................................................................... 8, 9

*Wolverine World Wide, Inc. v. Wolverine Can., Inc.*, 653 F. Supp. 2d 747, 773 (W.D. Mich. 2009) ............................................................................................. 8

**Rules**

Fed. R. Civ. P. 10(c) ...........................................................................................15

Fed. R. Civ. P. 12(b)(1) .........................................................................................2

Fed. R. Civ. P. 12(b)(6) .........................................................................................1

Fed. R. Civ. P. 12(f) .................................................................................. 2, 20, 21

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.      Whether Ford's failure to include any restriction on resale in its selling dealer's sales agreement bars Ford's claims where Ford agreed that any restriction on resale would be imposed by Ford's selling dealer and included in the selling dealer's sales agreement.

2.      Whether the Court has federal diversity jurisdiction where Ford agreed that no party could recover attorney's fees or damages exceeding $1.

3.      Whether Ford's claims for damages and attorney's fees should be stricken where Ford agreed that no party could recover attorney's fees or damages except for $1 of actual out-of-pocket costs.

66A6274.DOCX

## **CONTROLLING AND MOST APPROPRIATE AUTHORITIES**

Cena relies on the authorities cited in his Brief in Support of Motion to Dismiss Complaint and to Strike, including:

1. Buyer's Order, Agreement & Vehicle Information Form, attached hereto as **Exhibit 1**.

2. *ADR N. Am., L.L.C. v. Agway, Inc.*, 303 F.3d 653 (6th Cir. 2002)

3. *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 666 N.W.2d 271 (2003)

4. *Helwig v. Kelsey-Hayes Co.*, 907 F. Supp. 253, 256 (E.D. Mich.1995)

5. *Martin v. East Lansing Sch. Dist.*, 193 Mich. App. 166, 483 N.W.2d 656 (1992)

6. *Odell v. Humble Oil & Ref. Co.*, 201 F.2d 123, 128 (10th Cir. 1953).

7. *Rodzik v. N.Y. Cent. R.R. Co.*, 169 F. Supp. 803, 806 (E.D. Mich. 1959)

8. *Saint Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1938)

9. *Sanchez-Arroyo v. E. Airlines, Inc.*, 835 F.2d 407, 408 (1st Cir. 1987)

10. *Sellers v. O'Connell*, 701 F.2d 575, 578 (6th Cir. 1983)

11. *Tyson v. Sterling Rental, Inc.*, 836 F.3d 571 (6th Cir. 2016)

12. *UAW-GM Human Res. Ctr. v. KSL Recreation Corp.*, 228 Mich. App. 486, 579 N.W.2d 411 (1998)

13. *Uhl v. Komatsu Forklift Co., Ltd.*, 512 F.3d 294 (6th Cir. 2008)

14. *Valhal Corp. v. Sullivan Assocs., Inc.*, 44 F.3d 195, 209 (3d Cir. 1995)

## **INTRODUCTION**

Ford's action rests entirely on an alleged resale restriction that Ford failed to have its dealer incorporate in the dealer's sales agreement.  Ford agreed that the dealer's sales agreement would be the final governing contract setting "[t]he purchase price and ***all other terms of sale***" for the 2017 Ford GT. Compl. Ex.1, ¶ 2 (emphasis supplied). Ford's selling dealer included no resale restriction in the sales agreement, and Ford, therefore, cannot state any cause of action against Cena arising from Cena's resale of the subject vehicle.

Ford has tried to overcome its failure by not attaching the governing sales agreement and by instead attempting to assert claims based on a prior "click-through" agreement. But that prior agreement caps Ford's damages at the lesser of out-of-pocket costs and $1 and prohibits the recovery of attorney's fees— conclusively showing that Ford cannot recover damages which exceed this Court's diversity jurisdiction threshold.

## **BACKGROUND**

This action concerns the purchase and resale of a 2017 Ford GT which Ford claims violated an alleged restriction against reselling the vehicle within the first 24 months. Ford alleges it required Cena and other potential owners to apply to purchase the 2017 Ford GT. Compl. ¶ 11. Ford presented applicants with the Ford GT Application Program Terms and Conditions ("Terms and Conditions") and

required them "to check a box reflecting their agreement before they could proceed further," which Cena did on or before April 14, 2016. Compl. ¶¶ 12, 15; Compl. Ex. 1.  Ford alleges it selected Cena to purchase the vehicle and required him to execute an Affidavit of Eligibility and Release ("Affidavit of Eligibility"), which he did on July 29, 2016. Compl. ¶ 19, Compl. Ex. 2.

According to the complaint, the Ford GT Concierge Team sent Cena an email on December 12, 2016 which stated:

> Your opportunity to purchase this vehicle is non-transferable and you agree to retain ownership for a minimum of 24 months after delivery and not to re-sell the vehicle within this period of time. The new Ford GT can only be purchased through a Ford GT Selling Dealer.

Compl. ¶ 23.

Ford alleges that Cena signed a Ford GT Order Confirmation ("Order Confirmation") on January 28, 2017 which provides:

> By signing this Order Confirmation Form you are verifying the following:
>
> A) The specifications above accurately represent your Ford GT order.
>
> B) You understand that being selected for the opportunity to purchase this vehicle is non-transferable and agree not to sell the vehicle within the first 24 months of delivery. All vehicles must be purchased through a U.S. Ford dealer.

Compl. Ex. 3.

Ford paraphrases and quotes selected provisions from the foregoing Terms and Conditions, Affidavit of Eligibility, and Order Confirmation, alleging that these documents together "compris[e] the contract between Ford and Mr. Cena." Compl. ¶ 8. But Ford failed to paraphrase or quote the provisions in its Terms and Conditions and its Affidavit of Eligibility in which Ford and Cena expressly agreed that any restriction on resale would be imposed by Ford's selling dealer in the selling dealer's sales agreement. Ford thus stated in its Terms and Conditions and its Affidavit of Eligibility that "[s]ales of the GT will be made by Ford dealers," not Ford, and that the selling dealer, not Ford, would establish **all** terms of the sale:

> The purchase price and ***all other terms of sale*** will be determined by the seller in accordance with such terms and processes as the seller may establish.

Compl. Ex. 1 ¶ 2 (emphasis supplied); Compl. Ex. 2 ¶¶ 6(a), 6(c) (emphasis supplied). In the next sentence, Ford explained that **all** terms of sale included any restrictions on resale:

> Each seller of a GT will have the right to condition the sale on the purchaser's agreement to restrictions on resale or transfer of the GT or to a right of the seller to repurchase the GT within specified time periods, to the extent such restrictions or requirements are permitted under applicable law.

Compl. Ex. 1 ¶ 2; Compl. Ex. 2 ¶ 6(d).

Ford stated in its Affidavit of Eligibility that its selling dealer, not Ford, would agree with the purchaser on **all** terms of sale:

3

> 6. Sales of the GT. I understand and acknowledge that …
> (e) the terms of any purchase are subject to mutual agreement by the seller and the purchaser.

Compl. Ex. 2 ¶ 6.

Ford's selling dealer, Elder Ford of Tampa, LLC, sold the subject vehicle to Cena's company, HNS I, LLC, in a sales agreement called the Buyer's Order, Agreement & Vehicle Information Form, attached hereto as *Exhibit 1*. Ford had stated in its prior agreements and communications with Cena that Elder Ford would impose restrictions on resale, if any existed, in Elder Ford's sales agreement. Elder Ford imposed no restriction on resale in the sales agreement.

The sales agreement provides, "You agree to purchase the vehicle from us according to the terms of this Order and Agreement." Mot. Ex. 1, p. 1. The sales agreement continues with the terms of sale which do **not** restrict resale. The sales agreement concludes with a merger clause just above the final signature lines:

> This Order and Agreement represents ***the final agreement between the parties related to the sale of the vehicle*** and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreement of the parties.

Mot. Ex. 1, p. 1 (emphasis supplied). The governing, fully integrated sales agreement is dated October 12, 2017—more than nine months after the email and Order Confirmation that form the basis of Ford's claims. *Compare* Compl. Ex. 3 and Mot. Ex. 1.

In the "dispute" sections of the Terms and Conditions and the Affidavit of Eligibility, Ford limited its recovery to $1 of its actual out-of-pocket costs and prohibited recovery of attorney's fees:

> [A]ny and all claims, judgments and awards shall be limited to actual out-of-pocket costs incurred, and where permitted by applicable laws, the lesser of such amount and $1.00, including costs associated with submitting an application in the Program, but in no event attorneys' fees.

Compl. Ex. 1 ¶ 11(b); Compl. Ex. 2 ¶ 9(b). Notwithstanding Ford's limitation on damages and prohibition against recovery of attorney's fees, Ford seeks damages which allegedly exceed $75,000 and its attorney's fees.

## **ARGUMENT**

**A.    Ford's claims fail under the final, fully-integrated Sales Agreement which Ford agreed would impose any restrictions on resale of the subject vehicle.**

Unquestionably, contract language is interpreted according to its plain and ordinary meaning and will be enforced as written. *In re Smith Trust*, 480 Mich. 19, 24, 745 N.W.2d 754 (2008). In the Terms and Conditions and the Affidavit of Eligibility, Ford and Cena agreed that **all** terms for the sale of the 2017 GT— including any resale restrictions—would be established in a subsequent, final sale agreement between the buyer and selling dealer. Compl. Ex. 1 ¶ 2; Compl. Ex. 2 ¶ 6(c)-(e). Thus, if Ford wanted to restrict resale of the vehicle, Ford had to cause its selling dealer to include such a restriction in the selling dealer's sales agreement.

5

The Court may consider the selling dealer's sales agreement because the attachments to Ford's complaint reference the sales agreement and it is central to Ford's claims. "In reviewing a motion to dismiss, the Court 'may consider … exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein.'" *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015) (quoting *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008)). Ford's complaint attaches, paraphrases, and quotes the Terms and Conditions and the Affidavit of Eligibility, which in turn refer to and establish the selling dealer's agreement as the final agreement which governs all terms of sale including resale restrictions. *See* Fed. R. Civ. P. 10(c); Compl. Ex. 1 ¶ 2; Compl. Ex. 2 ¶ 6(c)-(e).

Of course, Ford failed to cause its selling dealer to include any resale restriction in the governing sales agreement, much less a prohibition on selling or transferring the 2017 Ford GT within 24 months of delivery. Ford cannot renege on its prior agreements, and cannot alter the fully-integrated, final, and controlling sales agreement, by claiming that prior inconsistent agreements and communications should control.[1] *See*, *e.g.*, *ADR N. Am., L.L.C. v. Agway, Inc.*, 303 F.3d 653, 658 (6th Cir. 2002) (applying Michigan law and holding, "[a] written

---

[1] It would appear that Ford would not want to take a contrary position and risk opening a floodgate of claims by vehicle buyers alleging an agreement with Ford Motor Company on sale terms that did not appear in their final agreements with the selling dealer.

integration clause is conclusive evidence that the parties intended the document to be the final and complete expression of their agreement" and to "supersede any prior contract on the same subject matter."); *UAW-GM Human Res. Ctr. v. KSL Recreation Corp.*, 228 Mich. App. 486, 502, 579 N.W.2d 411 (1998) ("[A] contract with a merger clause nullifies all antecedent claims. [citation omitted] In our view, this includes any collateral agreements that were allegedly an inducement for entering into the contract.").

Count I for breach of contract necessarily fails without the alleged resale restriction in the final, governing contract.

Count II for fraud, Count III for silent fraud, and Count IV for innocent misrepresentation fare no better. Each claim requires Ford to show that it reasonably relied on alleged misrepresentations. *See UAW-GM Human Res. Ctr.*, 228 Mich. App. at 504. Ford agreed that the dealer would determine all sale terms including any resale restrictions. As a matter of law, Ford could not 'reasonably rely' on an alleged representation concerning a resale restriction that Ford ultimately did not require its dealer to include in the final, fully-integrated, governing sales agreement. *See UAW-GM Human Res. Ctr.*, 228 Mich. App. at 504 ("Here, the merger clause made it unreasonable for plaintiff's agent to rely on any representations not included in the letter of agreement."); *Wolverine World Wide,*

*Inc. v. Wolverine Can., Inc.*, 653 F. Supp. 2d 747, 773 (W.D. Mich. 2009) (integration clause made reliance on alleged representations unreasonable).

Moreover, Ford's fraud claims are materially identical to its breach of contract claims. The existence of a contract bars tort claims unless "the legal duty allegedly violated by a defendant arises separately and distinctly from a defendant's contractual obligations." *Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 582 (6th Cir. 2016) (quotation omitted). While fraud in the inducement could be distinct from a contract claim, "fraud in the inducement is not available for a breach of a contract's terms, lest fraud in the inducement claims swallow all breach-of-contract claims." *Uhl v. Komatsu Forklift Co., Ltd.*, 512 F.3d 294, 304 (6th Cir. 2008). Thus, fraud in the inducement will only arise if the misrepresentations "*do not in themselves* constitute contract or warranty terms subsequently breached." *Id.* (quoting *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 209 Mich. App. 365, 532 N.W.2d 541, 546 (1995)).

Further, Ford's fraud claims rely on a future performance promise upon which Ford ultimately did not insist. Promises of future performance are not actionable, especially abandoned promises of future performance. *See Uhl*, 512 F.3d at 304-05; *Van Tassel v. McDonald Corp.*, 159 Mich. App. 745, 752, 407 N.W.2d 6 (1987). Other representations—that Cena would be a "good owner," that he would primarily operate the vehicle in Tampa, Florida, that he was "best suited

to enjoy the Ford GT," that he would "care properly for the vehicle," that he was "eligible" for the vehicle, and that he "wanted to be a part" of the vehicle program—are unactionable statements of pure opinion, puffing, and more future promises. Compl. ¶¶ 45, 60; *see*, *e.g.*, *Van Tassel*, 159 Mich. App. at 750-53.

Finally, Count V for unjust enrichment fails as a matter of law because an express contract, the dealer's sales agreement, governs the terms of sale, including any alleged resale restriction. *See*, *e.g.*, *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 478, 666 N.W.2d 271 (2003); *Martin v. East Lansing Sch. Dist.*, 193 Mich. App. 166, 177, 483 N.W.2d 656 (1992).

Accordingly, Ford's complaint should be dismissed for failure to state a cause of action.

**B.     The prior agreement Ford relies upon shows this action must be dismissed.**

Even without the final, governing sales agreement, the exhibits to Ford's complaint show this action must be dismissed. Ford invokes this Court's diversity jurisdiction. But Ford's Terms and Conditions and Affidavit of Eligibility prohibit Ford from recovering damages even approaching $75,000. Compl. Exs. 1 and 2.

As the party invoking federal jurisdiction, Ford bears the burden of establishing the amount in controversy. *See Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co., 621 F.3d 554, 559 (6th Cir. 2010)*. The plaintiff's allegation of damages is not controlling where "it appears to a legal certainty that

the claim is for less than the jurisdictional amount" or "the amount claimed is merely colorable." *Sellers v. O'Connell*, 701 F.2d 575, 578 (6th Cir. 1983) (citing *Saint Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938)). If a contract precludes the recovery of damages above the jurisdictional minimum, the action must be dismissed for lack of jurisdiction. *See*, *e.g.*, *Valhal Corp. v. Sullivan Assocs., Inc.*, 44 F.3d 195, 209 (3d Cir. 1995); *Sanchez-Arroyo v. E. Airlines, Inc.*, 835 F.2d 407, 408 (1st Cir. 1987); *Odell v. Humble Oil & Ref. Co.*, 201 F.2d 123, 128 (10th Cir. 1953).

Two terms prevent Ford from crossing the jurisdictional threshold. First, Ford's Terms and Conditions and its Affidavit of Eligibility expressly limit damages for "any and all claims" to the "actual out-of-pocket costs incurred." Compl. Ex. 1 ¶ 11(b), Ex. 2 ¶ 9(b). Ford does not allege any out-of-pocket costs (much less out-of-pocket costs exceeding $75,000), and instead seeks "disgorgement of profit," and "damages for loss of brand value, ambassador activity, and customer goodwill." Compl. ¶ 6, 32, 33, 42, 64, 67. Ford cannot rely on its claim for attorney's fees, as that too is prohibited. Compl. Ex. 1 ¶ 11(b), Ex. 2 ¶ 9(b).

If that were not enough, Ford's Terms and Conditions and its Affidavit of Eligibility go on to cap Ford's damages for "any and all claims" at $1. Even if Ford could allege that it somehow incurred large out-of-pocket costs, such costs could

not be recovered on account of the $1 ceiling. Ford cannot complain about the terms in a non-negotiable click-through agreement that Ford drafted, presented to customers, and required them to accept "before they could proceed further" with their applications. Compl. ¶ 12. Ford chose to include the term in its own take-it-or-leave-it contract and must live with the consequences.

Ford's own contract shows "to a legal certainty" that it cannot recover damages above $75,000. *Sellers*, 701 F.2d at 578. This action should be dismissed for lack of federal subject matter jurisdiction.

## C. Ford's claims for attorney's fees and damages beyond out-of-pocket costs should be stricken.

In the event that any claims survive dismissal, Fed. R. Civ. P. 12(f) authorizes the Court to "order stricken from any pleading any insufficient defense or any redundant, ***immaterial***, impertinent, or scandalous matter." (emphasis added). "Immaterial matters include requests for relief which are not available under the applicable law." *Helwig v. Kelsey-Hayes Co.*, 907 F. Supp. 253, 256 (E.D. Mich. 1995) (striking requests for compensatory damages, punitive damages, and disgorgement of profits which could not be recovered under applicable law), superseded on other grounds as stated in *Hill v. Blue Shield of Mich.*, 299 F. Supp. 2d 742, 751 n. 7 (E.D. Mich. 2003); *GE Healthcare Fin. Servs. v. Cardiology & Vascular Assocs.*, No. 05-71304, 2006 WL 950268, at *4 (E.D. Mich. Apr. 12, 2006) (quoting *Helwig* and striking paragraphs that were immaterial to claims);

11

*Rodzik v. N.Y. Cent. R.R. Co.*, 169 F. Supp. 803, 806 (E.D. Mich. 1959) (striking element of damages that the plaintiff could not recover).

As discussed, the Terms and Conditions and the Affidavit of Eligibility expressly prohibit the recovery of attorney's fees and any damages other than out-of-pocket costs. Ford's allegations of such damages and attorney's fees should be stricken under Rule 12(f) as "immaterial," including Complaint paragraphs 6, 33, 42, 64, 67, and the related portions of the Prayer for Relief paragraphs B, C, and D.

## CONCLUSION

For the reasons stated above, Defendant John Cena respectfully requests the Court to dismiss the complaint for failure to state a cause of action and for lack of federal subject matter jurisdiction, to strike Ford's requests for attorney's fees and damages exceeding $1 of its actual out-of-pocket costs, and to grant any other and further relief that the Court deems just and proper.

Respectfully submitted,

February 13, 2018                    By: /s/ Bryan D. Hull
                                     Bryan D. Hull (Fla. Bar 20969)
                                     BUSH ROSS, P.A.
                                     1801 N. Highland Ave.
                                     Tampa, FL 33602
                                     (813) 224-9255
                                     bhull@bushross.com

                                     and

                                     Jennifer M. Grieco (P55501)
                                     NEUMAN ANDERSON GRIECO
                                     MCKENNEY, P.C.
                                     401 South Old Woodward, Ste 460
                                     Birmingham, MI 48009
                                     (248) 594-5252
                                     jgrieco@nagmlaw.com

                                     *Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I, Bryan D. Hull, an attorney, hereby certify that on February 13, 2018, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification to all counsel of record.

/s/ Bryan D. Hull